IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ELLIOT KRAMES, et al.,                      §
                                            §
              Plaintiffs,                   §
v.                                          §              3:06-CV-2370-O
                                            §
BOHANNON HOLMAN, LLC, et al.,               §
                                            §
              Defendants.                   §

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are: Defendants Shane Ammons' and Kevin Downs' Motion for

Reconsideration and Motion to Dismiss for Lack of Jurisdiction over the person, or Motion to

Dismiss and Motion for More Definite Statement, filed August 24, 2007 (Doc. # 64);

Defendants' Bohannon Holman, LLC and Kenneth Bohannon's Motion to Dismiss for Failure to

State a Claim, Motion for More Definite Statement, and Original Answer Subject to Pleas of

Jurisdiction, filed August 24, 2007 (Doc. # 67); Defendant Williams Financial Group's Motion

to Dismiss, filed August 24, 2007 (Doc. # 70); Motion to Dismiss by Pro-Integrity Securities

Inc., filed August 27, 2007 (Doc. # 72); Defendants' M. Paul Turner & Company's and M. Paul

Turner's FRCP Motions and Briefs in Support and Subject thereto to their First Amended

Complaint, filed September 7, 2007 (Doc. # 78); Defendants National Life Insurance Company

and Life Insurance Company of the Southwest's Motion to Dismiss, filed October 3, 2007 (Doc.

# 89); and Plaintiff's Motion to Strike Defendants Ammons and Downs' Reply to Plaintiff's

Response to their Motion to Dismiss, filed October 4, 2007 (Doc. # 90).

Having considered the pleadings, legal arguments and record, and for the reasons set

forth below, the Court:

1

•**grants** Defendants Shane Ammons' and Kevin Downs' Motion for Reconsideration; **grants** their Motion to Dismiss for Lack of Jurisdiction over the person; and **denies as moot** their alternative Motion to Dismiss and Motion for More Definite Statement (Doc. # 64);

•**denies as moot** Plaintiffs' Motion to Strike Defendants Ammons and Downs' Reply to Plaintiff's Response to their Motion to Dismiss (Doc. # 90);

• **denies in part and grants in part** Defendants' Bohannon Holman, LLC and Kenneth Bohannon's Motion to Dismiss for Failure to State a Claim, and **denies as moot** their alternative Motion for More Definite Statement (Doc. # 67);

• **denies in part and grants in part** Defendant Williams Financial Group's Motion to Dismiss (Doc. # 70);

• **denies in part and grants in part** Defendants' M. Paul Turner & Company's and M. Paul Turner's FRCP Motions and Briefs in Support and Subject thereto to their First Amended Complaint(Doc. # 78); and

• **denies in part** and **grants in part** Defendants National Life Insurance Company and Life Insurance Company of the Southwest's Motion to Dismiss (Doc. # 89).

## I.    Procedural History and Factual Allegations

Plaintiffs are Elliott Krames, Rosellen Krames, Pacific Pain Treatment Center, and Pacific Pain Treatment Center Defined Benefit Plan (collectively "Plaintiffs").  This action arises from a dispute over Plaintiffs' Defined Benefit Pension Plan and Trust (the "Plan"), purchased for retirement investment purposes.  Pls. First Am. Original Pet. at 4.  Plaintiffs filed their original complaint in state court on November 22, 2006, against Defendants Bohannon Holman, LLC, M. Paul Turner & Co., The Williams Financial Group, Inc., Life Insurance Company of the

Southwest, National Life Insurance Company,[1] Kenneth Bohannon, Shane Ammons, Kevin Downs, Jennifer Consaul (since dismissed), and M. Paul Turner, alleging claims for breach of contract, negligence, breach of the duty of good faith and fair dealing, fraud, and violation of the Texas Insurance Code and Texas Deceptive Trade Practices Act. *See* Pls.' Original Pet. at 8-14. On December 19, 2006, Plaintiffs amended their Petition adding Defendant Pro-Integrity Securities, Inc. ("Pro-Integrity"), as well as claims against Defendants for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et. seq.*

Defendants Life Insurance Company of the Southwest and National Life Insurance Company removed the action to this Court on December 22, 2006 based on diversity jurisdiction (*see* 28 U.S.C. §1332) and the exclusive jurisdiction of the federal court over ERISA claims (*see* 29 U.S.C. § 1132(e)(1)). *See generally* Defs.' Notice of Removal.  This action was originally assigned to the Honorable Jorge A. Solis, and reassigned to this Court.  After removal, Plaintiffs sought leave of court to file a third amended complaint to add various claims and clarify their allegations, and a subsequent motion for leave to file a fourth amended complaint to further clarify their allegations and also add Terry Holman, a principal of Bohannon Holman, as a defendant.  While these motions were pending before the district court, the various defendants filed motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), for failure to plead fraud with adequate specificity under Fed. R. Civ. P. 9, and/or for lack of personal jurisdiction.  On July 30, 2007, the district court issued an order denying as moot Plaintiffs' motion for leave to file a third amended complaint, allowing Plaintiffs fifteen days to file a fourth amended complaint, and denying defendants' various motions without prejudice in light

---

[1] Defendant National Life Insurance Company indicated in its Notice of Removal that it was incorrectly sued as "National Life of Vermont a/k/a National Life."

of the decision to allow further amendment of the pleadings. (Doc. # 61).

On August 14, 2007, Plaintiffs filed their Fourth Amended Original Complaint.  (Doc. # 63).   Defendants thereafter filed their respective motions to dismiss, which are pending before the Court and ripe for adjudication.

In the Fourth Amended Original Complaint, Plaintiffs allege that Pacific Pain Treatment Center ("PPTC") established a Defined Benefit Plan that was a qualified ERISA Plan ("PPTC Plan" or "ERISA Plan") (Fourth Am Com. ¶ 3).[2]  Plaintiffs further allege that the PPTC Plan is a 412i defined benefit plan. *Id.* ¶ 141.[3]  The PPTC Plan was established to benefit the employees of PPTC.  *Id.* ¶¶ 36-38.  PPTC made contributions to the Plan for its participants, and at least $600,000 had been contributed to the PPTC Plan, which amount was used to purchase insurance policies. *Id.* ¶¶ 40, 42.  The Krames terminated the PPTC Plan in or around December of 2005. *Id.* ¶ 33. In September 2005, the Krames provided PPTC employees with notice that they were terminating the PPTC Plan.  *Id.* ¶¶ 36-37.

Plaintiffs' Fourth Amended Original Complaint alleges that the PPTC Plan did not deliver the promised tax benefits of a 412(i) plan.  Plaintiffs generally allege false and

---

[2]As the Court is confronted with motions to dismiss for failure to state a claim, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007).  To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted).  The "[f]actual allegations of [a complaint] must be  enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (quotation marks, citations, and footnote omitted).

[3]A 412(i) plan under the Internal Revenue Code is an employer-sponsored pension plan that, upon meeting certain requirements, qualifies for favorable tax treatment. *See* 26 U.S.C. § 412(e)(3) (West 2008). A 412(i) plan is funded with insurance products.  The Pension Protection Act of 2006, Pub. L. No. 109-280, amended section 412(i), and relocated it to section 412(e)(3).

misleading representations made during the course of the creation of the PPTC Plan, during its administration and in connection with its termination.  *Id.* ¶¶ 36-38, 41-43, 45, 61, 73, 79, 142, 148-50.  The alleged false and misleading representations concern the tax consequences of the Plan and liability under the Plan.  *See id.*  More specifically, Plaintiffs allege that: Defendants Bohannon Holman and Bohannon, as well as Defendants Ammons and Downs, created and sold Plaintiffs a noncompliant ERISA Plan that constituted an abusive tax shelter; that Defendants Turner & Company and Turner, acting as agents of Ammons and Downs and agents of Bohannon Holman and Bohannon, provided unreasonable actuary advice in connection with the ERISA Plan, that Bohannon Holman and Bohannon, as well as Ammons and Downs, did not properly disclose their commissions and relationships in connection with the alleged self-dealing with the ERISA Plan, and the ERISA Plan was terminated in a manner damaging to Plaintiffs. *Id.* ¶¶ 140-45, 146-48,  150-51.  Based on these allegations, Plaintiffs have brought claims for breach of contract, fraud, negligence, civil conspiracy, negligent misrepresentation, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and violations of ERISA.

## II.    Recent Events

On January 22, 2009, Plaintiffs filed a document entitled "Plaintiffs' Report to the Court on the Outcome of the IRS Audit of the Pacific Pain Treatment Center Defined Benefit Plan" ("Report"), along with a copy of the IRS Closing Agreement attached thereto ("Closing Agreement") (Doc. # 120).[4]   According to the Report, the IRS concluded in December 2008, after an audit, that the Plan failed to satisfy certain specific requirements of an Internal Revenue

---

[4]The Court has also reviewed Defendants National Life Insurance Company and Life Insurance Company of the Southwest's Response to Plaintiffs' Report, filed February 3, 2009 (Doc. # 121).

Code Section 412(i) Fully Insured Defined Benefit ERISA Plan.  As a result, the IRS determined

that Plaintiffs' Plan contributions were not deductible and were therefore includable in Plaintiffs'

ordinary income in 2005, when Plaintiffs elected to terminate the Plan.  Although the Closing

Agreement indicates that the IRS would allow Plaintiffs to pay additional amounts to certain ex-

employees to remedy the problem, Plaintiffs elected instead to have the Plan disqualified and

incurred tax liabilities in the amount of $604,000. *See* Report and Closing Agreement.  In their

Report, Plaintiffs now assert that the "plan was not an ERISA Plan, rather a NON-ERISA Bonus

Program, not deductible and fully subject to payment of income taxes, and therefore the ERISA

preemption, upon which Defendants' removal from State Court was predicated, no longer

applies."  *Id.* at 2.

First, the Court rejects Plaintiffs' suggestion that these recent events have in any way

deprived this Court of subject matter jurisdiction.  As already stated above, Defendants Life

Insurance Company of the Southwest and National Life Insurance Company removed the action

to this Court on December 22, 2006 based on diversity jurisdiction (28 U.S.C. § 1332) and the

exclusive jurisdiction of the federal court over ERISA claims (29 U.S.C. § 1132(e)(1)).  *See*

*generally* Defs.' Notice of Removal.  Accordingly, even absent Plaintiffs' ERISA claims, the

case is still properly before this Court based on diversity jurisdiction.

Second, based on the Report, and Plaintiffs' judicial statements therein, the Court

understands that Plaintiffs are abandoning their previously asserted ERISA claims.  Whether

Plaintiffs' recent maneuvers set forth in the Report are merely an attempt to avoid the broad

sweep of ERISA preemption or to divest this Court of jurisdiction (as Defendants National Life

Insurance Company and Life Insurance Company of the Southwest argue, *see* Doc. # 121), the

6

Court need not decide.  The Court determines that based on the Report, Plaintiffs have abandoned their ERISA claims in this action.

**III.    Defendants Shane Ammons' and Kevin Downs' Motion for Reconsideration and Motion to Dismiss for Lack of Jurisdiction over the person, or Motion to Dismiss and Motion for More Definite Statement (Doc. # 64)**

**A.    Motion to Reconsider**

The Court first considers Defendants Shane Ammons' and Kevin Downs' Motion for Reconsideration and Motion to Dismiss for Lack of Jurisdiction over the person.  As already stated, on July 30, 2007, the district court (Solis, J.) rejected Ammons's and Downs's argument that they should be dismissed from the lawsuit for lack of *in personam* jurisdiction, noting that ERISA conferred nationwide jurisdiction.  In light of Plaintiffs' recent abandonment of their ERISA claims (*see supra*), and the Court's exclusive reliance in its July 30, 2007 order on nationwide jurisdiction under ERISA to deny Ammons's and Downs's motion to dismiss for lack of personal jurisdiction, the Court must now consider whether Ammons and Downs are subject to *in personam* jurisdiction absent ERISA with regard to Plaintiffs' allegations of civil conspiracy, fraud, deceptive trade practices and insurance code violations.  Accordingly, in light of the changed circumstances, the Court **grants** Defendants Shane Ammons's and Kevin Downs's Motion for Reconsideration.

**B.    Motion to Dismiss for Lack of Jurisdiction over the Person**

**1.    Legal Standard**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant.  *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d

1185, 1192 (5th Cir. 1985).  When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart*, 772 F.2d at 1192.  Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution.  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir. 1993).  Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice."  *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine  fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must

present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277).  In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)). The Fifth Circuit has recently held that the court must consider each of plaintiff's claims individually when determining whether specific jurisdiction over a defendant exists. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.").

## 2.    Analysis

Defendants Ammons and Downs have moved to dismiss Plaintiffs' claims against them for lack of personal jurisdiction, and both have submitted sworn testimony that they have never resided in Texas; they do not own real property in Texas or have a financial interest in a Texas business; they have no offices, bank accounts, addresses or telephone numbers in Texas; they do not market any services in Texas, and Ammons has only approached one client in Texas previously; they have no employees or agents in Texas; and they have never committed any tort in Texas.  *See* Ammons and Downs Motion at 4-5 and Appendix thereto (Doc. # 66).  According to Ammons's Declaration, he resides in Georgia and is a "registered representative" with Bohannon Holman, LLC.  His contacts  with Texas consist of: (1) holding an unused, non-resident insurance license between September 2004 and September 2006; (2) visiting Texas

twice; and (3) a single contact with Williams Financial Group, a Texas company.   The only reason Ammons obtained a Texas non-resident insurance license was to talk to a client who had lived in Georgia, but moved to Texas.  That client never bought any insurance from Ammons and Ammons never made any other use of the non-resident license.  Ammons's contract with the Williams Financial Group is required of him by his employer, Bohannon Holman, which uses Williams Financial Group.  This relationship was solicited by Williams Financial Group.  As a "registered representative" of Bohannon Holman, he was required to work through broker/dealer Williams Financial Group, through which he placed buy and sell orders for securities transactions on behalf of Bohannon Holman clients, and for which he received commissions. Ammons further testifies that all of his interactions with Plaintiffs took place either while he was in California in September 2002, and meeting with the Krames, or while he was in Georgia and the Krames were in California, and that he never placed  any buy or sell orders for Plaintiffs through Williams Financial Group.

According to Downs's sworn Declaration, he is a resident of the State of Georgia and visited the State of Texas a total of four times in his life.  He has a single contract with the Williams Financial Group, a Texas company.  Downs's contract with the Williams Financial Group is required of him by his employer, Bohannon Holman, which uses Williams Financial Group.  This relationship was solicited by Williams Financial Group.  As a "registered representative" of Bohannon Holman, he was required to work through broker/dealer Williams Financial Group, through which he placed buy and sell orders for securities transactions on behalf of Bohannon Holman clients, and for which he received commissions. Downs further testifies that his only interactions with Plaintiffs took place via e-mail or telephone contacts with

Mr. Krames between Downs's location in Georgia and Krames's location in California.  He never placed  any buy or sell orders for Plaintiffs through Williams Financial Group.

Both Ammons and Downs argue that none of Plaintiffs' pleaded claims arise out of any contacts Ammons and Downs had with Texas, that any contacts The Williams Financial Group (or its predecessor, Pro Integrity) has with Texas cannot be imputed to them because of the fiduciary shield doctrine, and that any attempts to create an exception to the fiduciary shield doctrine based on corporate officers who use the corporation as an alter-ego will not work since Ammons and Downs were not corporate officers, and Plaintiffs have no pleading or evidence to invoke any corporate veil piercing theory.

In response, Plaintiffs contend that the Court has *in personam* jurisdiction over Ammons and Downs under ERISA, and that Ammons and Downs also have minimum contacts with Texas: (1) "because they worked through Pro-Integrity Solutions and Williams Financial Group, both Texas corporations"; (2) "[both] repeatedly represented that they had contacts with Texas" "by their repeated references to their connections to Pro-Integrity Solutions and Williams Financial Group in their correspondence with Plaintiffs"; and (3) to the extent they misrepresented their contacts with Texas, they have waived personal jurisdiction.  Pl. Resp. at 4. (Doc. # 82).  Plaintiffs' arguments arising from ERISA will not be considered, as Plaintiffs have abandoned their ERISA claims.

The Court rejects Plaintiffs' attempt to impute The Williams Financial Group's (and ProIntegrity's) contacts with Texas to Ammons and Downs.  Under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction

12

over the corporation[.]" *Stuart*, 772 F.2d at 1197.  This rule does not apply, however, to

"corporate officers who, in their role as corporate agents, injure persons by virtue of their

"tortious activity even if such acts were performed within the scope of their employment as

corporate officers.'"  *Optimum Return LLC v. Cyberkatz Consulting, Inc.*, 2004 WL 827835, at *

3 (N.D. Tex. March 26, 2004) (quoting *Stuart*, 772 F.2d at 1197). First, in their sworn

Declarations, Ammons and Downs contend that their respective contacts with the state of Texas

were undertaken solely in their capacities as employees of Bohannon Holmann and in the scope

and course of their employment.  Under the fiduciary shield doctrine, assuming its applicability,

the contacts of the corporate defendant cannot be attributed to them.  Further, although in

Plaintiffs' Response to the motion to dismiss, Plaintiffs argue that they sued Ammons and

Downs based on their own conduct (Pl. Resp. at 3-4), in the Fourth Amended Original

Complaint, Plaintiffs repeatedly allege that Ammons and Downs "were, at all times relevant to

Plaintiffs' causes of action, employees or agents of Defendant Bohannon Holman. . ." *See* Pl.

Fourth Am. Compl. ¶¶ 83, 139; *see also id.* ¶¶ 84, 85, 92, 98, 100, 103, 106, 111, 115, 125, 129,

152).  Finally, the cases Plaintiffs cite that create an exception to the fiduciary shield doctrine for

corporate officers who use the corporation as an alter ego are inapposite, as Plaintiffs have failed

to provide any arguments pertaining to the alter-ego doctrine.

Finally, Plaintiffs have failed to point to any affidavit testimony or evidence to refute the

sworn Declarations of Ammons and Downs regarding their lack of minimum contacts  with

Texas.  To the extent Plaintiffs believe that any conflicts between Plaintiffs' legal arguments in

their responsive brief and Ammons's and Downs's sworn declarations should be resolved in

Plaintiffs' favor (*see* Pl. Resp. at 4), such is not the standard.   As Ammons and Downs correctly

state, "[i]t is only conflicts between the parties' affidavits or sworn declarations that are resolved

in Plaintiffs' favor."  Def. Reply at 3 (citing *Felch v. Transportes Lar-Mex S.A. de C.V.*, 92 F.3d

320, 325 n.13 (5th Cir. 1996)); *see also Bullion*, 895 F.2d at 217.  Here, Plaintiffs have failed to

point to any conflicting affidavit testimony.

In short, having considered Ammons's and Downs's uncontroverted sworn declarations,

the pleadings and legal arguments, the Court concludes that Plaintiffs have failed to meet their

burden of establishing a prima facie case for the court's jurisdiction over nonresident Defendants

Ammons and Downs.  *See Ham*, 4 F.3d at 415; *Stuart*, 772 F.2d at 1192.  Plaintiffs have failed to

establish that Ammons and Downs had "minimum contacts" with the State of Texas, or that they

"purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 475.

Further, given the attenuated link between their employment with Bohannon Holmann, and

Bohannon Holman's use of The Williams Financial Group (or its predecessor, ProIntegrity), it

cannot be said that either Ammons or Downs "should reasonably anticipate being haled into

court" in Texas.  *World-Wide Volkswagen*, 444 U.S. at 297; *see also Burger King*, 471 U.S. at

475 (citations omitted) (the test for minimum contacts "ensures that a defendant will not be haled

into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the

'unilateral activity of another party or a third person.'" )

The Court further determines that it may not exercise general jurisdiction over Ammons

and Downs because their contacts with Texas are extremely limited.  The exercise of general

personal jurisdiction is proper when the nonresident defendant's contacts with the forum state,

even if unrelated to the cause of action, are continuous, systematic, and substantial.  *Helicopteros*

*Nacionales*, 466 U.S. at 414 n. 9.  "Cases involving general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are very substantial."  *Davis v. Billick*, 2002 WL 1398560, *3 (N.D. Tex. June 26, 2002) (citing *Helicopteros Nacionales*, 466 U.S. at 416-19; *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir. 1990); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987).  Based on Ammons's and Downs's uncontroverted sworn declarations summarized above, the Court determines that there are no "continuous, systematic, and substantial" contacts required for a finding of general jurisdiction.  Accordingly, the Court may not exercise general jurisdiction over Defendants Ammons and Downs.

For the reasons set forth above, the Court determines that it lacks *in personam* jurisdiction over Defendants Shane Ammons and Ken Downs, and **grants** Ammons and Downs's Motion to Dismiss for Lack of Jurisdiction over the person.  (Doc. # 64).  In light of this ruling, the Court **denies as moot** Ammons's and Downs's Motion to Dismiss and Motion for More Definite Statement (Doc. # 64).[5]

## IV.      Defendants' Bohannon Holman, LLC and Kenneth Bohannon's Motion to Dismiss for Failure to State a Claim, Motion for More Definite Statement, and Original Answer Subject to Pleas of Jurisdiction (Doc. # 67)

Defendants Bohannon Holmann, LLC and Kenneth Bohannon move the Court to dismiss Plaintiffs' ERISA claim for failure to state a claim, to dismiss Plaintiffs' DTPA and Insurance Code claims as preempted by ERISA, to dismiss Plaintiffs' fraud claim for failure to satisfy Rule 9(b), and to dismiss the civil conspiracy claims under the intra-corporate conspiracy rule and

---

[5]Further, the Court **denies as moot** Plaintiffs' Motion to Strike Defendants Ammons and Downs' Reply to Plaintiff's Response to their Motion to Dismiss (Doc. # 90).  Plaintiffs' Motion to Strike concerns alleged misrepresentations to the Court by Ammons and Downs pertaining to the status of the IRS's review of the ERISA Plan.  As Plaintiffs have abandoned their ERISA claims (*see supra*), the IRS's review of whether the Plan qualified as a 412(i) plan is irrelevant.

because the fraud claim fails as a matter of law.  In the alternative to the Court's dismissal of the fraud claims, Defendants Bohannon Holman, LLC and Kenneth Bohannon move the Court to require Plaintiffs to provide a more definite statement as to their fraud claims against them in accordance with Fed. R. Civ. P. 9(b) and 12(e).

### A.    Plaintiffs' ERISA Claim

Plaintiffs allege that Bohannon Holman, LLC and Kenneth Bohannon created and sold a non-compliant and abusive ERISA Plan to PPTC and the Krames (Fourth Am. Compl. ¶¶ 140-45); that they had a duty to Plaintiffs to submit the Plan to the IRS for review prior to January 2006 (*id.* ¶¶ 146-47); that Turner & Co. and Turner, acting as agents of Bohannon Holman and Bohannon, provided unreasonable actuary advice (*id.* ¶ 148); and that Bohannon Holman and Bohannon, as multiple service providers, had a duty to disclose commissions, relationships of the parties and other compensation.  (*Id.* ¶¶ 150-51).  Defendants Bohannon Holmann, LLC and Kenneth Bohannon have moved to dismiss the ERISA claims under Fed. R. Civ. P. 12(b)(6).  As Plaintiffs' have abandoned all ERISA claims, the Court denies as moot all portions of the motion seeking dismissal of the ERISA claims.[6]

---

[6]The Court notes that it is unlikely in this case that ERISA preemption would have applied to Plaintiffs' state law claims, notwithstanding Defendants' assertions to the contrary.  The Fifth Circuit requires a defendant asserting preemption to prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan" and (2) the claim "directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008).  The crux of Plaintiffs' claim is not the PPTC Plan as such, but the tax benefits allegedly promised for funding the plan with life insurance policies under 412(i).  Further, it is not clear that evaluating Plaintiffs' claims would even require consideration of the PPTC Plan, but rather the insurance policies.  Also, the claims do not appear to the Court to affect a relationship between traditional ERISA entities.  No claims are being brought by a plan administrator or anyone acting on behalf of any of Plaintiffs' defined benefit plans.  *See generally Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir.1996) (no ERISA preemption where resolution of fraud claim did not depend on the scope of plaintiff's rights under the ERISA plan);  *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 946-47 (5th Cir.1995)(no ERISA preemption of fraudulent inducement claim, although traditional ERISA entities involved); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990) (claims for fraudulent inducement to enter into plan not preempted by ERISA).

**B.      Plaintiffs' Fraud, Civil Conspiracy and DTPA Claims**

   **1.      Fed. R. Civ. P. 9(b)**

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil

Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim.  *Lovelace v.*

*Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule  9(b) provides, in pertinent

part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The amount of particularity required for

pleading fraud differs from case to case.  *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343

F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also*

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have

emphasized that Rule 9(b)'s ultimate meaning is context-specific").   In the Fifth Circuit, the

Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be

fraudulent, the speaker, when and why the statements were made, and an explanation of why

they were fraudulent."  *Plotkin v. IP Axess, Inc.*,407 F.3d 690, 696 (5th Cir. 2005); *see also*

*Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

Essentially, the standard requires the Complaint to allege answers to "newspaper questions"

("who, what, when, where, and how") of the alleged fraud.  *Melder v. Morris*, 27 F.3d 1097,

1100 n.5 (5th Cir. 1994).

   **2.      Analysis**

   Bohannon Holman, LLC and Kenneth Bohannon argue that Plaintiffs' fraud allegations fail

to meet the pleading standards of Rule 9(b).  Bohannon Holman, LLC and Kenneth Bohannon

argue that, notwithstanding prior opportunities and judicial admonitions "to plead their fraud

case as Rule 9(b) requires, [Plaintiffs] have not complied."  Reply at 5.  In their Fourth Amended

Complaint, Plaintiffs fail to particularly state the allegedly fraudulent conduct upon which they

base their claims and fail to specify statements and identify speakers.  Plaintiffs refer to

Defendants Bohannon, Holman, Ammons, Downs, and Turner as a group, and do not specify any

particular statement or speaker. The Court cannot tell from the pleadings when any particular

statement was made or why the statement was fraudulent.  With regard to the Fifth Circuit

requirement that a plaintiff identify who made the alleged fraudulent statement, Plaintiffs'

response to Bohannon Holmann, LLC and Kenneth Bohannon's motion is that they have

attempted to identify the fraudulent statements made "by the various Defendants" (*see* Pl. Resp.

at 3).   As Bohannon Holman, LLC and Kenneth Bohannon correctly argue, "an examination of

Plaintiffs' Fourth Amended Complaint reveals that no statement is attributed to a singular,

identified defendant.  Instead, Plaintiffs' live complaint continues to make group allegations

without identifying the speaker of the alleged statement, as Rule 9(b) requires."  Reply at 5.

The Court concludes that Plaintiffs' have failed to meet the particularity requirements of Rule

9(b).  Thus, Bohannon Holman, LLC and Kenneth Bohannon's motion to dismiss Plaintiffs'

fraud claim is granted.

Plaintiffs' failure to state a claim for fraud, which is the offense underlying their conspiracy

claim, necessitates that Plaintiffs' conspiracy claim should similarly be dismissed.  *See Allstate*

*Ins. Co. v. Receivable Finance Co.*, 2007 WL 2729468, at *33 (5th Cir. Sept. 20, 2007) (where

there is no fraud, there is no conspiracy to commit fraud); *Am. Tobacco Co. v. Grinnell*, 951

S.W.2d 420, 438 (Tex. 1997)("allegations of conspiracy are not actionable absent an underlying

[tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) ("because the fraud claim fails[,]

18

the fraud based conspiracy claim must fail also"); *see generally Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968) (conspiracy is a derivative tort).   Accordingly, Bohannon Holman, LLC and Kenneth Bohannon's motion to dismiss the civil conspiracy claim is granted for failure to satisfy the pleading requirements of Rule 9(b).

Alternatively, the Court agrees with Bohannon Holman, LLC and Kenneth Bohannon that Plaintiffs' conspiracy claims should be dismissed under the so-called "intra-corporate conspiracy rule."   *See* Brief at 6 (Doc. # 68).   Under this doctrine, in the case of a corporation, "the acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself." *See id.* (quoting *Elliot v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996)); *see also Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 5 (Tex. App. -- Corpus Christi 1991, no writ) ("As a matter of law, a corporation or other company cannot conspire with itself, no matter how many of its agents participate in the complained-of action."). Plaintiffs allege that Bohannon, Holman, Ammons, Downs, Turner & Co., and Turner "were, at all times relevant to Plaintiffs' causes of action, employees or agents of Defendant Bohannon Holman . . ."  Def. Brief at 7 (quoting Pl. Fourth Am. Compl. ¶ 83).[7]   As to conspiracy, Plaintiffs allege that these employees and/or agents committed an unlawful, overt act to further the object or course of action of the conspiracy.   Pl. Fourth Am. Compl. ¶ 109.   Thus, in addition to failing to satisfy Rule 9(b), Bohannon Holman, LLC and Kenneth Bohannon's motion to dismiss the civil conspiracy claim is granted based on the "intra-corporate conspiracy rule."

---

[7]The Court rejects Plaintiffs' argument that their conspiracy pleading is an alternative pleading. *See* Pl. Resp. at 3 (Doc. # 83.   A review of the Fourth Amended Complaint shows that Plaintiffs did not plead conspiracy as an alternative to their agency/employee allegation. Pls. Fourth Am. Comp. ¶¶ 106-114.  Indeed, conspiracy is not pled as an alternative to any other claim.  *Id.*  Moreover, Plaintiffs' suggestion in response to the motion to dismiss that one or more of the named alleged co-conspirators was not an agent of Bohannan Holman (Pl. Resp. at 3)contradicts pleadings to the contrary. Pls. Fourth Am. Comp. ¶¶ 83, 106, 111.

Further, "[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 824-25 (N.D. Tex. 2001) (and cases cited therein).  A comparison of Plaintiffs' DTPA claim in the Fourth Amended Complaint with its fraud claim reveals that the DTPA claim is predicated on the same misrepresentations and omissions as the fraud claim. *Compare* Fourth Am. Compl. ¶¶ 156-57(DTPA claim) with *id.* ¶ 101 (fraud claim).  Plaintiffs' DTPA allegations are deficient under Rule 9(b) for the same reasons as their fraud claims are insufficient under Rule 9(b) (*see supra*).[8]

In short, based on the foregoing, the Court **grants in part** and **denies in part** Defendants' Bohannon Holman, LLC and Kenneth Bohannon's Motion to Dismiss for Failure to State a Claim (Doc. #67).  The motion is dismiss is **granted** as to Plaintiffs' fraud, civil conspiracy and Texas DTPA claims and **denied** in all other respects.  In light of the foregoing, the Court **denies as moot** Bohannon Holman, LLC and Kenneth Bohannon's Motion for More Definite Statement (Doc. # 67).

## V.        Defendant Williams Financial Group's Motion to Dismiss

WFG, in violation of the Local Rules governing motion practice, includes in its answer a request that the complaint be dismissed for failure to state a claim under Rule 12(b)(6) and for failure to satisfy Rule 9(b).  WFG offers no argument in support of its 12(b)(6) motion, and does not even specify the claims it seeks to have dismissed.  Accordingly, WFG's motion to dismiss based on Rule 12(b)(6) is **denied**.  WFG's motion to dismiss Plaintiffs' fraud claims is more specific, and essentially complains that the complaint fails to plead the "who, what, when,

---

[8]The Court is mindful that Bohannon Holman, LLC and Kenneth Bohannon moved to dismiss Plaintiffs' causes of action for violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code based on ERISA preemption. In light of Plaintiffs' abandonment of their ERISA cause of action, these arguments are moot.  In any event, under *Patel*, *supra*, Plaintiffs' DTPA claims fail to satisfy Rule 9(b) as a matter of law.

where, and how" of the alleged fraud, as required by the Fifth Circuit.  *See Melder*, 27 F.3d at

1100 n.5.   For the reasons already set forth above in the Court's analysis of Defendants

Bohannon Holman and Holman's motion to dismiss the fraud claims for failure to comply with

Rule 9(b)(*see supra* Sec. IV), the Court **grants** WFG's motion to dismiss Plaintiffs' fraud claims

pursuant to Rule 9(b).  Dismissal of the fraud claims necessitates dismissal of Plaintiffs' claim of

civil conspiracy to commit fraud.  *See Allstate Ins. Co.*, 2007 WL 2729468, at *33(where there is

no fraud, there is no conspiracy to commit fraud); *Am. Tobacco*, 951 S.W.2d at 438 ("allegations

of conspiracy are not actionable absent an underlying [tort]").  Further, the Court dismisses

Plaintiffs' DTPA claims, which are also "subject to the requirements of Rule 9(b)."  *Patel*, 172

F.Supp.2d at 824-25 (N.D. Tex. 2001) (*see supra* Sec. IV).

## VI.        Motion to Dismiss by Pro-Integrity Securities Inc. (Doc. # 72)

Pro-Integrity Securities, Inc. (Pro-Integrity), in violation of the Local Rules governing

motion practice, includes in its answer a request that the complaint be dismissed for failure to

state a claim under Rule 12(b)(6) and for failure to satisfy Rule 9(b).  WFG's motion to dismiss

Plaintiffs' fraud claims essentially complains that the complaint fails to plead the "who, what,

when, where, and how" of the alleged fraud, as required by the Fifth Circuit.  *See Melder*, 27

F.3d at 1100 n.5.   For the reasons already set forth above in the Court's analysis of Defendants

Bohannon Holman and Holman's motion to dismiss the fraud claims for failure to comply with

Rule 9(b)(*see supra* Sec. IV), the Court **grants** WFG's motion to dismiss Plaintiffs' fraud claims

pursuant to Rule 9(b).  Dismissal of the fraud claims necessitates dismissal of Plaintiffs' claim of

civil conspiracy to commit fraud.  *See Allstate Ins.*, *supra*; *Am. Tobacco*, *supra*.  Further, the

Court dismisses Plaintiffs' DTPA claims, which are also "subject to the requirements of Rule

21

9(b)." *Patel*, 172 F.Supp.2d at 824-25 (N.D. Tex. 2001) (*see supra* Sec. IV).   WFG's motion to

dismiss, to the extent it can be construed as seeking dismissal of any other claims, is hereby

denied.

**VII.** **Defendants M. Paul Turner & Company's and M. Paul Turner's FRCP Motions and Briefs in Support and Subject thereto to their First Amended Complaint (Doc. # 78)**

Defendants M. Paul Turner & Co. and M. Paul Turner move to dismiss: (1) Plaintiffs' civil

conspiracy claims pursuant to Fed. R. Civ. P. 12(b)(6) based on the "intra-corporate conspiracy

doctrine;" and (2) Plaintiffs' fraud claims for failure to plead fraud with particularity as required

by Fed. R. Civ. P. 9(b).   Alternatively, Defendants M. Paul Turner & Co. and M. Paul Turner

request that the Court require Plaintiffs to provide a more definite statement.

With regard to Plaintiffs' civil conspiracy claim, the Court grants M. Paul Turner & Co. and

M. Paul Turner's motion to dismiss.   As already set forth above in the context of the Court's

dismissal of Plaintiffs' civil conspiracy claims against Bohannon Holman and Kenneth

Bohannon (*see supra* Sec. IV),in the case of a corporation, "the acts of a corporate agent are the

acts of the corporation, and a corporation cannot conspire with itself."   *Elliot*, 89 F.3d at 265;

Wilhite, 812 S.W.2d at 5 ("As a matter of law, a corporation or other company cannot conspire

with itself, no matter how many of its agents participate in the complained-of action.")   Plaintiffs

allege that Bohannon, Holman, Ammons, Downs, Turner & Co., and Turner "were, at all times

relevant to Plaintiffs' causes of action, employees or agents of Defendant Bohannon Holman . .

22

."  Pl. Fourth Am. Compl. ¶ 83.[9]  Accordingly, Plaintiffs' civil conspiracy claim is **dismissed** under the "intra-corporate conspiracy rule."

With respect to Plaintiffs' fraud claims, the Court also grants M. Paul Turner & Co. and M. Paul Turner 's motion to dismiss under Rule 9(b).  Plaintiffs fail to plead their fraud claims with particularity, and lump Defendants together, alleging that "Defendants Bohannon, Holman, Ammons, Downs and Turner made false, misleading and material misrepresentation of fact . . . both before and after the PPTC [Plan] was created."  Fourth Am. Compl. ¶ 101.  As M. Paul Turner & Co. and M. Paul Turner correctly argue, "Plaintiffs do not specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.  Mot. at 4 (Doc. # 78).  Accordingly, the Court **grants** M. Paul Turner & Co. and M. Paul Turner's motion to dismiss Plaintiffs' fraud claims under Rule 9(b).

In addition to dismissal of Plaintiffs' civil conspiracy claim under the "intra-corporate conspiracy rule," dismissal of the fraud claims also necessitates dismissal of Plaintiffs' claim of civil conspiracy to commit fraud.  *See supra* Sec. IV; *see also Allstate Ins.*, *supra*; *Am. Tobacco*, *supra*. Further, the Court dismisses Plaintiffs' DTPA claims, which are also "subject to the requirements of Rule 9(b)."  *Patel*, 172 F.Supp.2d at 824-25 (N.D. Tex. 2001) (*see supra* Sec. IV).  M. Paul Turner & Co. and M. Paul Turner's motion to dismiss, to the extent it can be construed as seeking dismissal of any other claims, is hereby denied.  In light of the Court's

---

[9]For the reasons already set forth (*see supra* at 20 n.7), the Court rejects Plaintiffs' argument that civil conspiracy was pleaded in the alternative, or that certain of the named alleged co-conspirators were not acting as agents/employees of Bohannon Holman.

ruling, the Court **denies as moot** Defendants M. Paul Turner & Co. and M. Paul Turner's request

that the Court require Plaintiffs to provide a more definite statement.

## VIII.    Defendants National Life Insurance Company and Life Insurance Company of the Southwest's Motion to Dismiss (Doc. # 89)

Defendants National Life Insurance Company and Life Insurance Company of the Southwest

(the "Insurance Defendants") contend that all Plaintiffs' state law claims are preempted by

ERISA, and that Plaintiffs' ERISA claim should be dismissed pursuant to Fed. R. Civ. P.

12(b)(6).   As Plaintiffs' have abandoned their ERISA claims, the Court will consider the

Insurance Defendants' alternative argument in support of their motion to dismiss.  In the

alternative to their arguments based on ERISA preemption, the Insurance Company Defendants

join in the arguments of the other Defendants that Plaintiffs' claims should be dismissed for

failure to plead fraud with the requisite particularity under Fed. R. Civ. P. 9(b).  *See* Insur. Def.

Mot. to Dismiss at 2 n.2.  For the reasons set forth previously in Section IV (*supra*), the Court

agrees that Plaintiffs' fraud claims should be dismissed for failure to plead fraud with the

requisite particularity under Fed. R. Civ. P. 9(b) and that, absent the underlying claim for fraud,

Plaintiffs' civil conspiracy claim must be dismissed.   *See supra*, Sec. IV.   Further, the Court

dismisses Plaintiffs' DTPA claims, which are also "subject to the requirements of Rule 9(b)."

*Patel*, 172 F.Supp.2d at 824-25 (N.D. Tex. 2001) (*see supra* Sec. IV).

Based on the foregoing, the Court **grants in part** and **denies in part** Defendants'

National Life Insurance Company and Life Insurance Company of the Southwest's Motion to

Dismiss (Doc. #89).  The motion is dismiss is **granted** as to Plaintiffs' fraud, civil conspiracy

and DTPA claims and **denied** in all other respects.

IX.    **Conclusion**

Based on the foregoing, the Court:

•**grants** Defendants Shane Ammons' and Kevin Downs' Motion for
Reconsideration; **grants** their Motion to Dismiss for Lack of Jurisdiction over the
person and **dismisses** them from this lawsuit; and **denies as moot** their alternative
Motion to Dismiss and Motion for More Definite Statement (Doc. # 64);

•**denies as moot** Plaintiff's Motion to Strike Defendants Ammons and Downs'
Reply to Plaintiff's Response to their Motion to Dismiss (Doc. # 90);

• **grants** Defendants' Bohannon Holman, LLC and Kenneth Bohannon's Motion
to Dismiss for Failure to State a Claim as to Plaintiffs' fraud, civil conspiracy and
DTPA claims and **denies** the motion in all other respects (Doc. #67);

• **denies as moot** Bohannon Holman, LLC and Kenneth Bohannon's alternative Motion
for More Definite Statement (Doc. # 67);

• **grants** Defendant Williams Financial Group's Motion to Dismiss as to
Plaintiffs' fraud, civil conspiracy and DTPA claims, and **denies** the motion in all
other respects (Doc. # 70);

• **grants** Defendants' M. Paul Turner & Company's and M. Paul Turner's FRCP
Motion as to Plaintiffs' fraud, civil conspiracy and DTPA claims, and **denies** the
motion in all other respects (Doc. # 78); and

• **grants** Defendants National Life Insurance Company and Life Insurance
Company of the Southwest's Motion to Dismiss Plaintiffs' fraud, civil conspiracy
and DTPA claims, and **denies** the motion in all other respects (Doc. # 89).

The Court's dismissal of Plaintiffs' fraud claim (as well as the fraud-based civil

conspiracy and DTPA claims) is **with prejudice**.  Although in this Circuit a plaintiff will be

given the opportunity to amend a complaint where it appears that more careful or detailed

drafting might overcome the deficiencies on which dismissal is based (*Hitt v. City of Pasadena*,

561 F.2d 606, 608-09 (5th Cir. 1977)), Plaintiffs have already been given numerous

opportunities to amend.    In its order allowing Plaintiffs leave to file their Fourth Amended

Complaint, the Court stated that "Plaintiffs have now had ample time and several opportunities to amend their factual allegations and join the proper parties; although the Court grants this amendment, it will not continue to entertain such amendments indefinitely."   July 30, 2007 Order (Solis, J.)(Doc. # 61).

The remaining claims are: breach of contract, negligence, negligent misrepresentation, and violations of the Texas Insurance Code.

**SO ORDERED** on this **24**th day of **March, 2009.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

26