IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELLIOT KRAMES, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-2370-O |
| | § | ECF |
| BOHANNON HOLMAN, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION

Before the Court are:

1.) Defendants National Life Insurance Company ("National Life") and the Life Insurance Company of the Southwest's ("Southwest") Motion for Summary Judgment (Doc. # 206), Brief in Support ("Def. Br.") and Appendix ("Def. App.") (Doc. # 207); Plaintiffs' Response thereto ("Pl. Rsp.") and Appendix ("Pl. Rsp. App.") (Doc. # 234); and Defendants' Reply (Doc. # 250).

2.) Plaintiffs' Motion for Summary Judgment Against Defendants National Life and Southwest ("Pl. Mtn.") and Appendix ("Pl. App.") (Doc. # 209), Brief in Support (Doc. #210) ("Pl. Br."); Defendants National Life and Southwest's Response thereto (Doc. # 231), Brief in Support thereof ("Def. Rsp. Br.") and Appendix ("Def. Rsp. App.") (Doc. # 233); and, Plaintiffs' Reply thereto (Doc. # 252).  Upon review of the docket, the relevant law, and the pleadings in the above styled case, the Court finds as follows:

**Background**

Plaintiffs are Dr. Elliot Krames; his wife, Rosellen; Pacific Pain and Treatment Center, a California Corporation owned by Dr. Krames with Rosellen serving as an officer; and the Pacific

Pain and Treatment Defined Benefit Plan. Defendants National Life and Southwest issued insurance policies and annuities for a benefits plan based upon applications submitted by Plaintiffs.

The Court entered its Memorandum Opinion and Order (Doc. # 123) on March 24, 2009, wherein it was resolved that Plaintiffs' remaining claims in this case were: breach of contract, negligence, negligent misrepresentation and violations of the Texas Insurance Code. On May 8, 2009, Plaintiffs filed their Fifth Amended Complaint (Doc. # 143) which included an additional claim for conversion.  On October 26, 2009, the Court, upon motion from Plaintiffs, entered its Order (Doc. # 235) dismissing Plaintiffs' claims for negligence, negligent misrepresentation and violations of the Texas Insurance Code against Defendants National Life and Southwest. Thus, the pending claims that remain against Defendant National Life and Southwest are for breach of contract and conversion.

Defendants National Life and Southwest move for summary judgment on both of Plaintiffs' remaining claims.[1]  Plaintiffs move for summary judgment solely on their claim for conversion. The Court will consider each of the claims in turn.

### Legal Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue of

---

[1] The Court notes that Plaintiffs' Response asserts otherwise, arguing that Defendants only addressed the conversion claim in their motion. Upon examination of Defendants' motion, however, the Court finds little basis for such an interpretation.  Indeed, a plain reading of said motion unmistakably reveals Defendants' arguments in favor of summary judgment on the breach of contract claim.

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Summary judgment in favor of the Defendant is proper if, after adequate time for discovery, the Plaintiff fails to establish the existence of an element essential to her case and to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker*

*v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

<u>**Analysis**</u>

***Breach of Contract***

The Court first considers whether Plaintiffs' breach of contract claim against Defendants National Life and Southwest should be dismissed. Defendants contend that the breach of contract claim fails as a matter of law because the contract in question, as currently pled by Plaintiffs, does not identify National Life and Southwest as parties. Def. Br. at 25. Because Plaintiffs have not alleged a contract wherein they and National Life and Southwest have a contractual relationship, Defendants argue, the breach of contract claim brought against them fails. *See Smiley v. Oxford Capital, L.L.C.*, 100 Fed. Appx. 970, 973 (5th Cir. 2004), citing *Raymond v. Rahme*, 78 S.W.3d 552, 561 (Tex. App. -- Austin 2002) (where parties lack contractual relationship, no breach of contract claim can be brought by either against the other).

The contract at issue is the Advisory Agreement entered into on December 2, 2002, between Plaintiffs and Defendants Pro-Integrity Securities, Inc., BohannonHolman, Kenneth Bohannon, and Terry Holman. It does not include National Life and Southwest as a signatory. *See* Pl. Rsp. App, Ex. 5, Doc. # 234-2, pg. 11; Def. App. 253-255. Plaintiffs' Fifth Amended Complaint, the live pleading in this case, alleges that the breach of contract claim arises from this agreement. *See* Doc. # 143, ¶ 91 (identifying the contract as the agreement entered into on

December 2, 2002). The live pleading, however, asserts no other claim for breach of contract based upon the annuities and insurance policies created for Plaintiffs by National Life and Southwest.  Stated differently, the only contract identified in Plaintiffs' Fifth Amended Complaint for the alleged breach of contract against National Life and Southwest is the December 2, 2002 agreement. In addition, Plaintiffs disclaim any assertion that they are bringing a claim against National Life and Southwest for breach of contract based upon the December 2, 2002, agreement.  Pl. Rsp. at 16 ("Plaintiffs did not sue National Life and LSW [Southwest] on breach of contract on the "Advisory Agreement" which Plaintiffs entered into with the Bohannon Holman Defendants and Pro-Integrity Securities, Inc.").

Although Plaintiffs disclaimed suit against National Life and Southwest for breach of contract on the agreement of December 2, 2002, they nonetheless assert that said agreement was not the sole contract claim brought against Defendants.  Pl. Rsp. at 16. Specifically, Plaintiffs state that they "have sued National Life and LSW [Southwest] for breach of contract on the insurance contracts and annuity contracts." *Id*. In what appears to be an attempt to convince the Court that other contracts are present in the Fifth Amended Complaint, Plaintiffs direct the Court's attention to paragraph 90 (and subsequent paragraphs) of the active pleading. Pl. Rsp. at 17.

Plaintiffs' assertion as to a breach of contract claim based upon other contracts, however, is inconsistent with the live pleadings before the Court.  The portion of the Fifth Amended complaint to which Plaintiffs direct the Court's attention is specifically limited to references to the December 2, 2002, agreement previously discussed above.  At no point in this section of the live pleading - the very portion pointed to by Plaintiffs - is there a cause of action based upon

5

insurance and annuity contracts between National Life and Southwest and Plaintiffs.

In sum, the Court determines that: 1) Plaintiffs have disclaimed a breach of contract claim against Defendants National Life and Southwest from the December 2002 agreement; 2) the live pleading in this matter fails to demonstrate any other contract upon which Plaintiffs might have brought a claim for breach of contract against said defendants.  Accordingly, given the inadequacy of Plaintiffs' Fifth Amended Complaint in stating a claim for breach of contract against Defendants National Life and Southwest, the Court dismisses this claim.[2]

***Conversion***

Both parties have moved for summary judgment on Plaintiffs' remaining claim for conversion.

Plaintiffs allege that Defendants National Life and Southwest converted Plaintiffs' premium payments by holding them in non-interest bearing suspense accounts for close to nine months and by using money segregated for the payment of one premium for that of another. Pl. Rsp. at 2.  Defendants National Life and Southwest contend that Plaintiffs' claims for conversion

---

[2] As observed previously in this case, the Court notes that the Fifth Circuit allows a plaintiff the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based (*Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977)). In its Memorandum Opinion and Order (Doc. # 123) dated March 24, 2009, the Court stated, "Plaintiffs have already been given numerous opportunities to amend. In its order allowing Plaintiffs leave to file their Fourth Amended Complaint, the Court stated that "Plaintiffs have now had ample time and several opportunities to amend their factual allegations and join the proper parties; although the Court grants this amendment, it will not continue to entertain such amendments indefinitely." July 30, 2007 Order (Solis, J.)(Doc. # 61)."  Notwithstanding these admonitions, the Court permitted Plaintiffs to file a Fifth Amended Complaint on May 5, 2009. Doc. # 138.  Despite these warnings and the numerous allowances for amendment of the complaint previously permitted, the Court still finds the live pleading in this action deficient as to the claim for breach of contract against National Life and Southwest. Accordingly, it is the opinion of this Court that the deficiencies leading to dismissal of the breach of contract claim are solely attributable to Plaintiffs' pleading and the arguments presented in their Response, and not impatience of the Court.

are barred by the relevant statute of limitations, and that the discovery rule does not apply. Def. Br. at 20-21, 24.  Plaintiffs dispute the assertion that the discovery rule does not apply because, they argue, their pleadings state facts sufficient to plead it.  Pl. Rsp. at 14-16.

The question for the Court's determination is whether Plaintiffs' conversion claim against Defendant National Life and Southwest are barred by the statute of limitations as a matter of law.

Conversion[3] is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Bandy v. First State Bank, Overton*, 835 S.W.2d 609, 622 (Tex.1992).  An action for conversion of money will lie where the money is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper. *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.--Dallas 1992, writ denied).

### Statute of Limitations

In Texas, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)); *see also*, *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)("As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy."). For conversion claims, the claim accrues at the time of the allegedly

---

[3] Both parties rely on Texas case law for providing the underlying substantive law for Plaintiffs' conversion claim (Def. Br. at 24; Pl. Rsp. at 6).  The Court notes that Defendants also asserted that Vermont state law should be applied to the conversion claim.  Def. Rsp. Br. at 22. However, Defendants also cite Texas case law in addition to Vermont case law, and, as previously stated, also relied upon Texas state law in their Brief in Support of their Motion for Summary Judgment.  Based upon the parties' reliance upon Texas state law, the Court applies Texas case law in analyzing the conversion claim.

unlawful taking. *Rogers v. Ricane Enters., Inc.,* 930 S.W.2d 157, 166 (Tex. App.--Amarillo

1996, writ denied). Conversion claims are governed by a two-year statute of limitations. TEX.

CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp. 2005).

### *Application of the Discovery Rule*

The discovery rule is a limited exception to the statute of limitations. *See Computer

Assocs. Int'l. Inc. v. Altai*, 918 S.W.2d 453, 455,(Tex. 1996). As such, it should not be applied

liberally.  *Conoco, Inc. v. Amarillo Nat'l Bank*, 14 S.W.3d 325, 328 (Tex. App.--Amarillo 2000,

no pet.) (finding rule inapplicable in case alleging conversion of collateral). Texas courts apply

the discovery rule exception to defer the accrual of a cause of action until the plaintiff knew or,

by exercising reasonable diligence, should have known of the facts giving rise to the cause of

action. *See Altai*, 918 S.W.2d at 455*; KPMG Peat Marwick v. Harrison County Housing Finance

Corp*., 988 S.W. 2d 746, 749 (Tex. 1999). The burden rests upon the defendant not only to plead

limitations but also to negate the discovery rule. *See Woods v. William M. Mercer, Inc*., 769

S.W.2d 515, 518 n. 2 (Tex. 1988). Moreover, the discovery rule applies only in cases that satisfy

the "unifying principle," meaning that the injury must be inherently undiscoverable and the

evidence of the injury must be objectively verifiable. *See Altai*, 918 S.W.2d at 456.

An inherently undiscoverable injury need not be impossible to discover, but must be by

nature unlikely to be discovered within the prescribed limitations period despite due diligence.

*Altai*, 918 S.W.2d at 456.  The question Courts must answer is not whether the particular injury

was actually discovered by a plaintiff within the limitation period, but whether "it was the type

of injury that is generally discoverable by the exercise of reasonable diligence." *Urbanczyk v.

Urbanczyk*, 2009 Tex. App. LEXIS 587, * 7 (Tex. App. Amarillo Jan. 29, 2009) quoting, *HECI

*Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). "This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a type of injury rather than a particular injury was discoverable." *Beavers v. Metro. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 83027, * 9  (S.D. Tex. Nov. 8, 2007).

For cases involving conversion claims "the statute of limitations generally begins to run at the time of the unlawful taking . . . . In certain cases, however, the 'discovery rule' defers the accrual of a cause of action until the plaintiff discovers or, in the exercise of reasonable diligence, should discover the 'nature of his injury.'" *Burns v. Rochon*, 190 S.W.3d 263, 271 (Tex.App.-Houston 2006) (internal citations omitted). "The discovery rule is appropriate for conversion cases where possession is initially lawful and the cause of action accrues 'upon demand and refusal, or discovery of facts supporting the cause of action, whichever occurs first.'"*Clower v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. LEXIS 87524, * 7 (E.D. Tex. Sept. 22, 2009)(quoting *Burns*, 190 S.W.3d at 271); *see also*, *Hofland v. Elgin-Butler Brick Co.*, 834 S.W.2d 409 (Tex. App. Corpus Christi 1992) ("For the class of conversion cases composed of initial lawful possession, discovery of unequivocal acts of conversion, and no effective demand and refusal, we believe the discovery rule should apply.")

However, in assessing the inherently undiscoverable requirement, courts have noted that cases involving investment decisions due not warrant application of the discovery rule, "particularly those involving large amounts of money, [that] by their nature demand due diligence." *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 514 (N.D. Tex.

2001) citing *Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 409 (5th Cir. 1998).[4]

In the present case, the allegedly unlawful taking occurred in December 2002, when Plaintiffs issued checks to National Life of Vermont for payment of premium on annuities that would become due in 2003.  In essence, Plaintiffs assert that the money issued by check to National Life of Vermont was improperly endorsed and then held for almost nine months in a suspense account, by Defendant National Life Insurance Company.  *See generally*, Pl. Rsp. Br.  Thus, at least a portion of Plaintiffs' conversion claim alleges that some of the monies were not lawfully possessed by National Life.  Based on Plaintiffs' allegations, this theory would not be the class of conversion claim warranting application of the discovery rule. *Hofland*, 834 S.W.2d at 414.

Plaintiffs also assert that in February 2003, Defendant Southwest improperly transferred $1,501.98 from funds which had been paid to it by Plaintiffs to National Life.  Pl. Br. at 11.  This allegedly improper transfer also constitutes the factual basis underlying Plaintiffs' conversion claims. Under this theory, the Court should apply the discovery rule as it constitutes a class of conversion where a party initially possessed property lawfully. *Hofland*, 834 S.W.2d at 414.

As an initial matter, the Court determines that Plaintiffs' pleadings sufficiently state facts

---

[4] In *Tapia*, the Fifth Circuit explained, "[c]ourts recognize that financial investment involves attendant risks. The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and the associated risks. As several courts have recognized, the party claiming fraud and/or misrepresentation must exercise due diligence to discover the alleged fraud and cannot close his eyes and simply wait for facts supporting such a claim to come to his attention. This principle applies in a variety of contexts, including the issue presented in this case: when the applicable statutes of limitations begin to run."

Although the claims for fraud and misrepresentation have been dismissed, the Court nonetheless finds *Tapia's* admonition instructive in assessing Plaintiffs' due diligence based upon the nature of the alleged injury.

that implicate operation of the discovery rule.  Additionally, given that the Court is presented

with a theory of conversion which presents alleged facts where the allegedly converted property

was initially lawfully possessed, the discovery rule applies.  Even with application of the

discovery rule, however, the evidence submitted by both parties, enables the Court to

comfortably determine that Plaintiffs's conversion claim is barred by the statute of limitations as

a matter of law.

First, Plaintiffs assert that the checks it wrote to National Life of Vermont were

improperly endorsed by National Life Insurance Company in December 2002, but this was not

discovered until October 2008, after this case had been filed and discovery had been undertaken.

Pl. Br. at 16.  The record in this case, however, reveals that Plaintiffs received a letter from

National Life Insurance Company in July 2003 wherein National Life - and *not* National Life of

Vermont - provided the Pacific Pain and Treatment Centers Defined Benefits Plan administrators

with a necessary form for tax filing purposes.  Pl. Rsp. App. 000658, or Doc. # 234-6, Pl. Exhibit

14.  Thus, as early as July 2003, Plaintiffs should have known that the money from the checks

they had made out to National Life of Vermont were under the control of National Life.

Additionally, during his deposition testimony, Plaintiff Elliot Krames, one of the signatories to

the checks, stated that he was told that National Life of Vermont was the same as National Life

Insurance Company when he signed the checks in December 2002.  Def. App. 00037. Based

upon this evidence, Plaintiffs should have known that National Life, and not necessarily National

Life of Vermont could have held their money.

Second, Plaintiffs assert that Defendants improperly held their money for nine months -

from the date of issuance of the checks in December 2002 until payment on the

annuity/insurance policies was due in September 2003.  Again, the evidence on the record betrays Plaintiffs' arguments on this point.  First, the record submitted by both parties evidences an email dated August 5, 2003 from an employee at BohannonHolman informing Plaintiff Rosellen Krames that she should ignore bills that she would be receiving for her insurance policies. Pl. Rsp. App. Doc. # 234-6, Pl. Exhibit 15; Def. App. 000409. When presented with this email during her deposition, Mrs. Krames stated, referring to said email, "it took me that long to figure out that somehow our money was not appropriated to our benefits fully."  Def. App. 00186-00188.  In essence, the evidence indicates that Plaintiffs knew as of August 2003 that the money they had pre-paid for investment had not been appropriated for their benefit.

Next, Plaintiffs allege that the $1,500 transfer from Southwest to National Life wasn't discovered until October 2008. Again, Mrs. Krames statement that "it took me that long [August 2003] to figure out that our money was not appropriated to our benefits fully" betrays the argument that the alleged injury was inherently undiscoverable.  It stands to reason, then, that as of August 2003, at least one plaintiff was aware that the plan monies were being misappropriated in a manner that did not benefit them. Importantly, how Plaintiffs' monies might have been misappropriated does not factor into the Court's analysis. Awareness of misappropriation is the necessary fact for consideration by the Court in determining if a factual development exists that effects the accrual of the conversion claim. Accordingly, the Court finds that a fact is present that should give rise to a cause of action to someone exercising reasonable diligence. *Altai*, 918 S.W.2d at 455.

Finally, the Court must assess whether there are facts known by Dr. Krames that should have given rise to a cause of action if he had exercised reasonable diligence.  At his deposition,

12

Dr. Krames testified that Mrs. Krames told him, "the plan that we initially were told we that we were going to have is not the plan that we have." Def. App. 000029.  Despite a lack of specific recollection as to when this utterance was made, Dr. Krames nonetheless recalled that the conversation occurred *before* Mrs. Krames conducted extensive internet research on the type of benefit plan they had set up.  Def. App. 000031.   Mrs. Krames testified that the approximate date when she conducted the subsequent internet research was in September 2004 [5] because she "had completely lost faith in . . . the plan we had purchased and was feeling very uncomfortable."  Def. App. 000192.  Based on this time line, the Court can safely infer from the evidence on the record that Dr. Krames was at least aware of facts that should have given rise to a cause of action if he had exercised reasonable diligence to discover the alleged conversion of his investments.

For the reasons stated, the evidentiary record defies Plaintiffs' argument that they did not have notice of the improper holding of their money until October 2008.  The discovery rule delays the commencement of the limitations period until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act or resulting injury. In this case, the latest date that the discovery rule delays the commencement of the limitations period is either, August 2003 when Plaintiffs admit were aware of misappropriation of their money or September 2004, when the record demonstrates that Dr. Krames knew facts that should have given rise to his exercising due diligence. The Court, therefore, sets the accrual date for no later than September 2004, when Plaintiffs should have known through the exercising of due diligence of

---

[5] Printouts of Mrs. Krames' internet research also confirm this time line.   See Def. App. 000415, Dep. Ex. 46.

the facts giving rise to the claim.

Although Plaintiffs have alleged a number of theories through which they might assert their conversion claims against National Life and Southwest, none will entitle them to relief because the claim has expired.  Plaintiffs filed suit on November 22, 2006, however, they did not introduce their claim for conversion until May 8, 2009, when they filed their Fifth Amended Complaint.  *See*, Pl. Rsp. at 2; Doc. # 143.  September 2004 is clearly outside of the two year statutory period for bringing a claim of conversion in Texas.  As such, the Court finds that Plaintiffs' claim for conversion fails as a matter of law.

<u>Conclusion</u>

The evidentiary record submitted by the parties confirms that no genuine issue of material fact exists as to when Plaintiffs' claim for conversion accrued. Even with the discovery rule operating to defer the accrual of Plaintiffs' cause of action for conversion, such operation results in the claim failing to satisfy the statute of limitations as a matter of law.  The evidence submitted on the record indicates that Plaintiffs' were aware of facts that the exercise of reasonable diligence would have made discoverable.

Plaintiffs' claims against Defendants National Life and Southwest for conversion are time-barred, as a matter of law; and  Plaintiffs' breach of contract claim has been dismissed. Consequently, Defendants National Life and Southwest's Motion for Summary Judgment (Doc. # 206) is GRANTED, Plaintiffs' Motion for Summary Judgment (Doc. # 209) is DENIED, and all of Plaintiffs' remaining claims against National Life and Southwest are hereby DISMISSED.

So ORDERED this 12th day of November, 2009.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**